# THE CITY OF BROOKLYN, RESPONDENT, *v.* FREDERICK J. NODINE, APPELLANT.

*Common council — power of, to regulate and license business — it cannot pass a revenue measure under disguise of a regulation.*

The charter of the city of Brooklyn authorizes the common council "to regulate and license * * * vehicles of every description used on the public streets in the conduct and carrying on of any business, except that of physicians, established and transacted in said city, provided that the license fee charged for any one vehicle shall not exceed three dollars per year." An ordinance was passed providing that licenses should be granted by the mayor, to such persons as he might deem proper, to carry on the business or trade, or to act in the capacity of "coachmen, porters, owners and drivers of hacks, * * * and all other vehicles used upon the public streets in the conduct of any business (except that of physicians), * * * provided the licenses shall be granted to no person other than citizens of the United States." It provided that on issuing licenses specified sums should be charged and paid, among others: "For each vehicle drawn by two horses, three dollars; to each vehicle drawn by one horse, one dollar."

In an action against the defendant, a livery stable keeper, to recover license fees alleged to be due upon vehicles owned and used by him in his business:

*Held*, that the ordinance was too broad as it included as well vehicles used for pleasure as for business.

That it was objectionable because it authorized the mayor to license, a power which should have been exercised by the common council.

That it was not an attempt to "regulate and license," but an attempt to raise a revenue by taxation.

That it was void. (DYKMAN, J., dissenting.)

*Quære*, as to the validity of the clause prohibiting the issue of licenses to aliens.

APPEAL from a judgment, entered upon an order overruling a demurrer, interposed on the ground that the complaint did not state facts sufficient. to constitute a cause of action.

The action was brought by the City of Brooklyn to recover license fees alleged to be due from the defendant upon twenty vehicles owned and used by him in his business of keeping a livery stable, and which on demand he refused to pay.

On the 16th day of June, 1880, the legislature so amended the city charter as to permit the common council "to regulate and license common carriers, carriers of passengers, criers, hawkers, peddlers, pawnbrokers, junk dealers, public cartmen, truckmen, hackmen, cabmen, expressmen, dealers in coal, fire-wood, hay and straw, meat shops, fishmongers, auctioneers, undertakers, intelligence offices, exhibitions, menageries, circuses, common shows and dogs, real estate, steamboat, railroad, insurance and ticket agents, billiard saloons, bowling alleys and shooting galleries; also vehicles of every description used on the public streets in the conduct and carrying on of any business, except that of physicians, established and transacted in said city, provided that the license fee charged for any one vehicle shall not exceed three dollars per year. The common council shall also fix an annual license fee, not exceeding the sum of twenty dollars, for each street or horse car daily operated and used in said city." (Laws of 1880, chap. 564.) Thereupon the common council passed an ordinance which contained among others the following provisions:

SECTION 1. Licenses shall be granted by the mayor from time to time, to such persons as he may deem proper, to carry on the business or trade, or to act in the capacity of coachmen, porters, owners and drivers of hacks, trucks, cabs, omnibuses, stages, railroad cars and all other vehicles used upon the public streets in the conduct of any business (except that of physicians), * * * provided that licenses shall be granted to no person other than citizens of the United States.

*   *   *   *   *

SEC. 3. There shall be charged and paid to the city clerk (except in the case of railroad cars, whose payment shall be made to the city treasurer) for the use of the city, on issuing the said licenses by the parties to whom they may be granted, the following sums:

*   *   *   *   *

For each driver of a hackney coach, cab or omnibus, other than the person licensed to keep the same, one dollar.

For each vehicle drawn by two horses, three dollars.

For each vehicle drawn by one horse, one dollar.

*William G. Cooke*, for the appellant.

*William C. De Witt*, for the respondent.

BARNARD, P. J. :

The ordinances in question are not warranted by the power granted by the legislature. The power given is " to regulate and license " * * vehicles of every description used on the public streets in the conduct and carrying on of any business except that of physicians, established and transacted in said city." The defendant is a livery stable keeper and his business is not required to be licensed. The ordinance authorizes the mayor to grant licenses for certain classes of business providing that no license shall be granted to " other than citizens of the United States."

The ordinance then proceeds to establish a fee for the license in certain specified cases, among them, " For each vehicle drawn by two horses, three dollars. For each vehicle drawn by one horse, one dollar." It is not against vehicles owned by any person doing business in Brooklyn, but against the owners of such vehicles simply as owners. It covers as well vehicles used for pleasure as for business, and this was beyond the legislative grant of power. Proof cannot be given to show that the defendant conducted a business which might be licensed. If the ordinance does not point out the defendant, of necessity, it is defective. The ordinance is also objectionable because it leaves a discretion to the mayor to license or not. It was for the common council to license or refuse.

The gravest objection to the ordinance is that it is not within the power granted, inasmuch as no attempt is made to " regulate and license," but to pass an extensive revenue measure under these words. There is no selection ; certain businesses should be carefully guarded. In this ordinance all classes of business mentioned in it may be carried on by those who pay the tax or license therefor. Must a person be a citizen of the United States to be taxed

for his vehicle? Can a license to use a vehicle be granted to one not a citizen? Is the defendant a citizen? · If he is not a citizen must he pay a tax on vehicles which he is not permitted to use and cannot be licensed to use? Where is the legislative warrant for city legislation against those who are not citizens in so many forms of human labor?

These are questions which might be considered, but it is not necessary to discuss them. The power to regulate and license does not carry the power to tax, which is the only end of. this ordinance. It is competent for the legislature to give the city of Brooklyn power to tax vehicles or other personal property. The law under which this ordinance was passed, does not give such power.

The judgment overruling the demurrer should, therefore, be reversed, and an order be granted that the demurrer be sustained, with leave to plaintiff to amend in twenty days on payment of costs.

GILBERT, J., concurred, except as to exclusion of aliens.


DYKMAN, J. (dissenting):

Chapter 564 of the Laws of 1880, amends the charter of the city of Brooklyn. The part material to this controversy empowers the city "to regulate and license * * * vehicles of every description used on the public streets in the conduct and carrying on of any business * * * established and transacted in said city, provided that the license fee charged for any one vehicle shall not exceed three dollars per year."

The complaint alleges that the defendant carries on business as a livery-stable keeper, and lets single and double carriages to be used in the public streets of Brooklyn, and therefore that he is liable to exactions called license fees fixed by the common council pursuant to the act quoted.

The complaint was demurred to, the demurrer overruled, and this appeal is from the judgment in plaintiff's favor.

The defendant urges that what this act calls a license fee is in reality a tax.

It is further argued that a tax cannot be imposed in the guise of a license fee under the police power "to regulate and license," and lastly that the tax is unconstitutional. ·

If we were disposed to take a narrow view of this controversy, it would suffice to say that it does not affirmatively appear on the face of the complaint that the amount of the fees in question go beyond police expenses, and must result in revenue.

We presume, however, that this is a tax imposed for revenue under guise of license fees. That it is the imposition of a duty on sums of money for the purpose of revenue. And still we are constrained to decide that there is no constitutional restraint upon the power of the legislature; that the legislature has implied this intent to confer power upon the city of Brooklyn to tax under guise of licensing, and that the defendant is within the scope of the power conferred. Judge DILLON in his valuable work on municipal corporations, after making reference to adjudicated cases on the subject, appends this note: "These cases show some diversity of opinion as to the right to tax particular employments as distinguished from property, but the correct view, it is submitted, is this: Unless specially restrained by the constitution, the legislature may provide for the taxing of any occupation or trade, and may confer this power upon municipal corporations. But such taxes are apt to be inequitable, and the principle not free from danger of great abuse. Hence ordinances of this character ought not to be sustained, unless the authority be expressly or otherwise unequivocally conferred." (Dillon on Mun. Corp. [2d ed.], note, p. 392.)

It was proposed in the constitutional convention of 1846 to make taxation uniform. (Debates Convention of 1846 [Atlas ed.], 104, 289.) But nothing came of the attempt, and to-day our constitution places no limit upon the power of the legislature to tax. (*The People* v. *The Mayor of Brooklyn*, 4 N. Y., 427.)

It results that the legislature of this State has power to tax vehicles, or any employment in which they are used.

This view in no way conflicts with *The Mayor* v. *Second Avenue Railroad Company* (32 N. Y., 274). In that case the tax was imposed under a general power to "regulate and license." It was rightly decided this did not authorize a tax for revenue. (*Cincinnati* v. *Bryson*, 15 Ohio, 625.) These decisions went upon the theory that the legislature had not authorized a tax. No question was made of its power.

The power of the legislature to tax any trade or employment

being perfect, the remaining question relates to the manner of its exercise, and in this case whether the tax can be covered with the guise of a license fee.

We think the legislature intended to empower the city of Brooklyn to collect revenue, by taxation of the several trades enumerated in the act. It certainly knew that each vehicle might be obliged to pay three dollars, for it fixed that amount as the limit. If such an exaction be a tax, it had in mind a tax. Other parts of this act, especially the exaction from each railroad car, beyond question, was intended to furnish revenue, and the doctrine *noncitur a sociis* has especial application here.

" The power to license and regulate particular branches of business or matters is usually a police power; but when license fees or exactions are plainly imposed for the sole or main purpose of revenue, they are in effect taxes."

" Ordinarily the mere power to license or to subject to police regulations does not give the power to tax distinctly for revenue purposes, but it may give the power when such appears from the nature of the subject-matter, or upon the whole charter or enactment to have been the legislative intent, but not otherwise." (Dillon on Mun. Corp., § 609.)

We think it was the legislative intent to impose a sum not to exceed three dollars upon every vehicle used in business on the streets of Brooklyn.

The inevitable result would be revenue, and we are constrained to hold that revenue was the legislative intent.

It may be true that the defendant is not within the class of hackmen and cabmen. These, especially for purposes of license and police regulation, are defined to be those who occupy stands in the public street and solicit custom. But the defendant does use vehicles " on the public streets in the conduct and carrying on of his business." All such are within the express terms of the act.

The judgment should be affirmed, without costs.

Judgment reversed, without costs.